# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JEFFREY WADE JONES,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. CIV-08-241-SPS |
| **MICHAEL J. ASTRUE,** **Commissioner of the Social Security Administration,** | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

The claimant Jeffrey Jones requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work he can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on November 20, 1960, and was forty-six years old at the time of the administrative hearing. He had a high school education plus one year of college and previously worked as a electrician's helper, stocker/sorter, construction laborer, forklift driver, concrete paving laborer, and maintenance repairer helper. The claimant requested a closed period of disability from March 1, 2004, through October 18, 2006, because of anxiety-related disorder, substance addition disorder, lower back pain, status post trauma, upper back pain, hypertension, hepatitis C, hiatal hernia, bipolar disorder, depression, and post traumatic stress disorder ("PTSD").

**Procedural History**

On April 20, 2005, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Edward Thompson conducted a hearing and found the claimant was not disabled on November 27, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the physical residual functional capacity ("RFC") to perform light work, *i. e.*, he could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant's mental restrictions included the ability to understand, remember and carry out simple tasks under routine supervision, relate superficially to co-workers and supervisors for work purposes, and tolerate some involvement with the general public (Tr. 21). The ALJ concluded that the claimant could perform his past relevant work as a stocker/sorter and electrician's helper (Tr. 26).

**Review**

The claimant contends that the ALJ erred by failing to conduct a proper step-four analysis of his past relevant work. In support of this contention, the claimant argues: (i) that the ALJ failed to make specific findings regarding the mental demands of his past relevant work; (ii) that the ALJ improperly relied on the testimony of the vocational expert ("VE") as the sole basis for concluding his impairments did not preclude performance of such work; and, (iii) that the ALJ failed to determine whether the VE's testimony regarding his past relevant work conflicted with the Dictionary of Occupational Titles ("DOT"). The Court finds that the ALJ *did fail* to conduct a proper step four analysis, and the decision of the Commissioner must therefore be reversed.

Step four of the sequential analysis is comprised of three distinct phases. The ALJ must first establish the claimant's RFC, then determine the demands of the claimant's past work (both physical and mental), and ultimately conclude whether the claimant's RFC enables him to meet those demands. *See, e. g., Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) [citations omitted]. At each phase, the ALJ must make specific factual findings, *id.*, and although the ALJ may rely on information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id.* at 1025.

There is no dispute here about the first phase of the ALJ's step four analysis, *i. e.*, the claimant does not contend that the ALJ failed to properly determine his RFC. The claimant *does* contend, however, that the ALJ failed to properly determine at phase two the *mental* demands of his past relevant work. *See*, *e. g.*, *id.* at 1024 ("When the claimant has a mental impairment, 'care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e. g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.'"), *quoting* Soc. Sec. Rul. 82-62, 1982 WL 31386, at *3. In this regard, the ALJ could consider "the claimant's ability to perform either . . . '[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties . . . as generally required by employers throughout the national economy.'" *Andrade v. Secretary of Health*

*& Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993), *quoting* Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1. The Court agrees.

At the administrative hearing, both the ALJ and the VE questioned the claimant about his past relevant work. They adequately covered the *physical* demands of the claimant's past work, but neither asked any questions about the *mental* demands of such work, particularly: (i) the extent to which the claimant had to understand, remember and carry out more than simple tasks under routine supervision; (ii) the extent to which the claimant had to relate more than superficially to co-workers and supervisors for work purposes, and the extent to which the claimant had to tolerate more than some involvement with the general public. Nor did the VE provide any testimony regarding the mental demands of such work. Thus, the ALJ was wholly without evidence as to the mental demands of the claimant's past relevant work, either as he actually performed it or as it is customarily performed in the national economy. *See*, *e. g.*, *Winfrey*, 92 F.3d at 1024 ("Here, the ALJ made no inquiry into, or any findings specifying, the mental demands of plaintiff's past relevant work, either as plaintiff actually performed the work or as it is customarily performed in the national economy."). *See also Frantz v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007) ("Here, even though the ALJ found Ms. Frantz's bipolar disorder to be a severe impairment, he did not develop any evidence regarding the *mental* demands of Ms. Frantz's past relevant work, either as she did it or as it is typically performed in the national economy.") [emphasis added].

In response to hypothetical questions incorporating the claimant's mental limitations, the VE opined that someone with the claimant's RFC could perform his past relevant work

as a stocker/sorter and as an electrician's helper. The VE thus made *implicit* findings about the mental demands about the claimant's past relevant work and his ability to meet them given his RFC. In his written decision, the ALJ simply adopted in conclusory fashion the VE's opinion at the administrative hearing that the claimant could return to his past relevant work, *i. e.*, he did not adopt *explicit* findings about the mental demands of the claimant's past relevant work and his ability to meet them made by the VE, and he made no explicit findings of his own. *See Frantz,* 509 F.3d at 1304 ("The ALJ's conclusory statement that '[t]he exertional and non-exertional requirements of this job [as a general clerk] are consistent with the claimant's residual functional capacity' is insufficient under *Winfrey* to discharge his duty to make findings regarding the mental demands of Ms. Frantz's past relevant work. This case is unlike *Doyal v. Barnhart,* 331 F.3d 758, 761 (10th Cir.2003), where the ALJ quoted the VE's testimony approvingly in support of his own findings at steps two and three of the analysis. Here, there was no VE testimony, and no evidence of any kind, to establish the mental demands of Mr. Frantz's past relevant work and thus no evidence to support a finding that Ms. Frantz retains the mental RFC to work as a general clerk."). Such a process is wholly inadequate at step four of the sequential analysis, as the *Winfrey* court explained:

> At step five of the sequential analysis, an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform. This approach, which requires the VE to make his own evaluation of the mental and physical demands of various jobs and of the claimant's ability to meet those demands despite the enumerated limitations, is acceptable at step five because the scope of potential jobs is so broad.

> At step four, however, the scope of jobs is limited to those that qualify as the claimant's past relevant work. Therefore, it is feasible at this step for the ALJ to make specific findings about the mental and physical demands of the jobs at issue and to evaluate the claimant's ability to meet those demands. Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.

92 F.3d at 1025. The ALJ thus erred not only in failing to make appropriate findings at phase two, but also in ceding his decision-making authority to the VE at phase three. *See id.* at 1026 ("In the second phase, the ALJ failed to develop the record on, and to make the required findings about, the mental demands of plaintiff's past relevant work. This failure infected the third phase, where the ALJ abdicated his fact finding and evaluation responsibilities to the VE.").[2]

The ALJ failed to conduct a proper step four analysis of the claimant's ability to perform his past relevant work, and the decision of the Commissioner must therefore be reversed. On remand, the ALJ should make phase two findings about the mental demands of the claimant's past work and determine at phase three whether he can perform that work

---

[2] The claimant's final argument is that the ALJ failed to ask the VE if her testimony regarding his past work deviated from the DOT. *See* Soc. Sec. Rul. 00-04p, 2000 WL 1898704, at *4 ("When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the DOT."). The Commissioner contends that the ALJ did ask, but the record suggests otherwise, *i. e.*, the ALJ asked only if the VE *was familiar with* the provisions of the DOT (*e. g.*, the definitions of the exertional levels and the specifics of lifting, carrying, standing, etc.), not whether her *testimony was consistent with* the DOT (Tr. 465-66). On remand, the ALJ should properly determine whether any VE testimony on which he intends to rely is consistent with the DOT.

based on his RFC. If the ALJ determines at step four that the claimant cannot perform his past work, he should then determine at step five what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 11th day of September, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**